UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JOAN CONTRERAS,

                        Plaintiff,

   v.                                                **REPORT & RECOMMENDATION**

WAL-MART STORES EAST, LP and                  CV 18-3589 (SJF)(GRB)
GREEN ACRES MALL, LLC,

                        Defendants.
-----------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

      Before the undersigned is a motion for summary judgment by defendant Wal-Mart Stores East, LP ("defendant" or "Wal-Mart") against plaintiff Joan Contreras ("plaintiff"), Docket Entry ("DE") 20, which has been referred to the undersigned by the Honorable Sandra J. Feuerstein for report and recommendation. Order dated July 9, 2019. For the reasons stated herein, the undersigned respectfully recommends that defendant's motion for summary judgment be DENIED.

## PROCEDURAL BACKGROUND

      Plaintiff commenced this action by filing a summons and complaint in Queens County Supreme Court on January 11, 2018. DE 1. On June 20, 2018, defendant filed a notice of removal to this Court based on diversity of citizenship. *Id.*[1] The parties proceeded to discovery, which was completed on or about April 3, 2019. DE 12. On July 9, 2019, defendant filed the instant motion for summary judgment. DE 20. Judge Feuerstein referred the motion for summary judgment to the undersigned. Order dated July 9, 2019.

---

[1] Defendant Green Acres Mall, LLC has not appeared in this action. *See generally* Docket Sheet; DE 1.

**FACTUAL BACKGROUND**

The facts are taken from the parties' 56.1 statements. The facts are undisputed unless otherwise noted.

   *1. The Incident*

Plaintiff commenced this negligence action to recover for personal injuries sustained on May 25, 2017 at the Walmart Super Center at 77 Green Acres Road South, Valley Stream, NY 11581 ("Valley Stream Walmart").[2] Def.'s 56.1 Statement ¶¶ 1-5, DE 22; Pl.'s 56.1 Response, ¶¶ 1-5, DE 25 (collectively Def.'s & Pl.'s 56.1 Statements"). On May 25, 2017 at approximately 3:53 pm, plaintiff went to the Valley Stream Walmart with her adult daughter, Jada Coleman. Def.'s & Pl.'s 56.1 Statements ¶¶ 6, 37. There are two mats in the entrance side of the vestibule of the Valley Stream Walmart. *Id.* at ¶¶ 8, 22, 35. Upon entering the vestibule, plaintiff walked to her right to an area with shopping carts. *Id.* at ¶ 9. While plaintiff was approximately two to three feet away, plaintiff observed water on the floor. *Id.* at ¶ 11. Plaintiff walked through the water. *Id.* at ¶ 12. Plaintiff's left foot slipped, her right foot twisted and buckled, and plaintiff fell backwards. *Id.* Plaintiff felt wetness on her pants after the fall. *Id.* at ¶ 13. Plaintiff saw that the water covered an area measuring approximately four by four feet. *Id.* at ¶ 14. Plaintiff could not discern if the water was dirty or clean. *Id.* at ¶ 15. Plaintiff did not see any footprints

---

[2] Defendant provides the following editor's note at the end of press releases: "'Wal-Mart Stores, Inc. is the legal trade name of the corporation,' . . . . 'The name 'Walmart,' expressed as one word and without punctuation, is a trademark of the company and is used analogously to describe the company and its stores. Use the trade name when it is necessary to identify the legal entity, such as when reporting financial results, litigation or corporate governance.'" Jane Wells, *Wal-Mart? Wal\*Mart?? Walmart???*, CNBC, https://www.cnbc.com/id/32403443 (last updated Aug. 2, 2010).

in the area or any tracks from shopping carts prior to falling. *Id.* at ¶¶ 16, 17. Plaintiff did not know how long the water was present, or its source. *Id.* at ¶¶ 18-19.

Ms. Coleman testified that as she and the plaintiff entered the vestibule, she moved forward while the plaintiff moved to the right to get a shopping cart. *Id.* at ¶ 21. Ms. Coleman heard plaintiff call her name. *Id.* Ms. Coleman approached the plaintiff and helped her from the floor. *Id.* at ¶ 24. Ms. Coleman did not notice any water on the floor prior to plaintiff's fall. *Id.* at ¶ 26. Following plaintiff's fall, Ms. Coleman saw "a lot of water overflowing coming from the drain nearby." *Id.* at ¶ 27. Ms. Coleman described the water as a "thin layer of water through that whole area between the carpet and the drain." *Id.* at ¶ 28. Wal-Mart has had no reports of problems with the drain in the vestibule area. *Id.* at ¶¶ 29-32.

2. *Rain*

The parties agree that the water in the vestibule was caused by rainwater tracked in from the outside of the Valley Stream Walmart. Def.'s Br. 4, DE 23; Pl.'s Br. 8-9, 18, DE 26; *see also* Pl.'s 56.1 Response ¶ 37. Both parties also agree that it was raining earlier in the day, but not when plaintiff and her daughter entered the Valley Stream Walmart. Pl.'s 56.1 Response ¶ 38; *see also* Def.'s & Pl.'s 56.1 Statements ¶ 7; Def.'s 56.1 Reply ¶ 38, DE 27. Both parties rely upon a certified weather report. Def.'s & Pl.'s 56.1 Statements ¶ 38 (citing Def.'s Ex. N, DE 21-14); Pl.'s Br. 9, 18. The certified weather report shows that approximately a half inch of rain fell from 4:00 am to 3:00 pm on May 25, 2017 at John F. Kennedy Airport, which is about five miles away from the Valley Stream Walmart. Pl.'s 56.1 Response ¶ 38; Def.'s Ex. N.

3

*3. Wal-Mart's Protocol*

Katrina Jones, an assistant manager of the Valley Stream Walmart, testified regarding the store's maintenance protocol for the vestibule. Pl.'s 56.1 Response ¶ 29; Def.'s 56.1 Reply ¶ 29. The protocol required maintenance associates to place caution cones in the vestibule if the floors were wet, and to clean the wet areas of the floor using a wet mop. Pl.'s 56.1 Response ¶ 29. Ms. Jones testified that every Wal-Mart employee has an obligation to identify wet areas on the floor, to guard them, clean or report the water to maintenance. *Id.* Ms. Jones further testified that the floor of the vestibule should be inspected every fifteen to twenty minutes. *Id.*

Defendant argues that the maintenance protocol is ultimately immaterial, and Ms. Jones's testimony reveals that she was testifying about the spills created on the floor, not water tracked-in from outside. Def.'s 56.1 Reply ¶ 29. The deposition transcript reveals that Ms. Jones was responding to "[a]ny kind of wetness on the floor." *See* Def.'s Ex. H 19:17, DE 21-8. Viewed in the light most favorable to the plaintiff, the maintenance protocol as applied to the situation at issue.

*4. Video Surveillance*

Plaintiff cites to video surveillance, which depicts the Valley Stream Walmart's entrance and plaintiff's slip and fall location. Pl.'s 56.1 Response ¶ 36. The video began at 2:59 pm. *See* Def.'s Ex. M. Both parties agree that several individuals can be seen entering the store with umbrellas, though neither party provides the Court with any time stamps. Def.'s & Pl.'s 56.1 Statements ¶ 36. The independent review of the surveillance video reveals the presence of customers carrying umbrellas at several times beginning at 3:03 pm. Def.'s Ex. M.[3] Several of

---

[3] Customers can also be seen carrying umbrellas at 3:04 pm, 3:05 pm, 3:06 pm, 3:07 pm, 3:08 pm, and 3:09 pm.

4

these customers closed umbrellas, walked to the vestibule area where plaintiff fell, retrieved a shopping cart from that area, and placed closed umbrellas in the shopping cart before entering the store. *Id.* At 3:03 pm and 3:18 pm, employees can be seen adjusting one of the mats on the entrance side in the vestibule. Def.'s Ex. M. At 3:21 pm, an employee can be seen pulling a shopping cart from the vestibule to inside the store. *Id.* From the start of the video to plaintiff's fall, no Valley Stream Walmart employee can be seen mopping or wiping the vestibule. Pl.'s 56.1 Response ¶ 37; Def.'s Ex. M.

At 3:46 pm, an employee returned a cart to the area where the plaintiff fell. Pl.'s 56.1 Response ¶ 36; Pl.'s Ex. E; Def.'s Ex. M. Seconds later, another employee walked through the vestibule and out of the store. Pl.'s 56.1 Response ¶ 36; Pl.'s Ex. F; Def.'s Ex. M. At 3:48 pm, five minutes before plaintiff's fall, another customer slipped and fell in the vestibule area. Pl.'s 56.1 Response ¶ 36; Pl.'s Ex. D, DE 24-4; Def.'s Ex. M. There is no indication from the record that this customer who slipped before plaintiff's accident made any report or complaint. *See generally* Combs Aff.; Pl.'s 56.1 Response. As identified by Ms. Jones in her deposition, from 3:50 pm, Valley Stream Walmart assistant manager Natasha Buckley walked through the vestibule and entered the store. Pl.'s 56.1 Response ¶ 36 (citing Def's Ex. H at 38:10-39:20); Pl.'s Ex. G; Def.'s Ex. M. Ms. Jones testified that assuming that Ms. Buckley were to have seen the water on the floor, her responsibility would have been to address it or alert maintenance. Pl.'s 56.1 Response ¶ 36 (citing Def's Ex. H at 39:17-20).

At all times in the video, Valley Stream Walmart employees stood near the exit side inside the store, separated from the vestibule by clear sliding doors. Pl.'s 56.1 Response ¶ 36. These employees are called "happy to help" employees according to Ms. Jones. *Id.* (citing Def.'s Ex. H at 36:18-37:17).

Plaintiff fell at approximately 3:53 pm. Pl.'s 56.1 Response ¶ 37. The "happy to help" employees appeared to look in plaintiff's direction, but they did not approach plaintiff. *Id.* At 4:00 pm, an employee cleaned the area where plaintiff fell with a squeegee. *Id.* At 4:02 pm, another employee mopped the area where plaintiff fell. *Id.*

## LEGAL STANDARD

Under the *Erie* doctrine, federal procedural law governs the standard for deciding summary judgment motions, and New York substantive law governs the elements of the plaintiff's cause of action. *Urrutia v. Target Corp.*, 681 F. App'x 102, 104 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); *see also Ghali v. Wal-Mart Stores East, LP*, No. 18-CV-2495 (CS), 2019 WL 1745704, at *3 (S.D.N.Y. Apr. 18, 2019); *Rivera v. Target Corp. Store, Inc.*, No. 15-CV-7846 (HBP), 2017 WL 2709745, at *4 (S.D.N.Y. June 21, 2017).

Thus, this motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom.*, *Bartels v. Schwarz*, 643 F. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

New York negligence law applies here. Def.'s Br. 3; Pl.'s Br. 2. To prove negligence under New York law, plaintiff must demonstrate duty owed by the defendant to the plaintiff, a breach thereof, and that the breach proximately caused plaintiff's injury. *Ghali*, 2019 WL 1745704, at *4; *Young v. Morrison Mgmt. Specialists, Inc.*, No. 14-CV-4261 (RER), 2017 WL 435783, at *4 (E.D.N.Y. Feb. 1, 2017); *Rivera*, 2017 WL 2709745, at *4; *Chong*, 2015 WL 2250250, at *2. To prove breach in a slip and fall case, plaintiff must establish that defendant created the condition that caused the fall, or that the defendant had actual or constructive notice

of the condition that caused the fall. *Ghali*, 2019 WL 1745704, at *4; *Young*, 2017 WL 435783, at *4; *Rivera*, 2017 WL 2709745, at *4; *Chong*, 2015 WL 2250250, at *2; *Miller v. Gimbel Bros., Inc.*, 262 N.Y. 107, 108 (1933).

"In a slip-and-fall case, the federal summary judgment standard differs from that of New York." *Ghali*, 2019 WL 1745704, at *3; *see also Rivera*, 2017 WL 2709745, at *4. As one court described,

> If this action had remained in state court, in order to prevail on its motion for summary judgment, defendant would have had to demonstrate that there was no genuine issue that it did not have actual or constructive notice of the condition that plaintiff alleges caused her fall. . . . However, because the action has been removed to federal court, [Federal Rule of Civil Procedure] 56's burden allocation scheme applies, and a defendant's motion on premises liability case will ordinarily be granted unless plaintiff offers evidence sufficient to create a genuine issue of fact that the defendant had actual or constructive notice of the allegedly dangerous condition.

*Rivera*, 2017 WL 2709745, at *4 (internal citations omitted).

## DISCUSSION

The parties dispute whether plaintiff can establish that defendant created the dangerous condition, or that the defendant had actual or constructive notice of the dangerous condition. *See* Def.'s Br. 3; Pl.'s Br. 2. Wal-Mart indisputably did not create the dangerous condition that caused plaintiff's fall. Def.'s Br. 4-5; *see generally* Pl.'s Br. The only issues are whether plaintiff can establish that Wal-Mart had actual or constructive notice of the condition.

1. **Actual Notice**

Defendant argues that Wal-Mart did not have actual notice because "[t]here is no evidence that a Wal-Mart employee actually observed water on the floor prior to the incident." Def.'s Br. 6-7. Plaintiff argues that the video surveillance shows another customer slipping and

7

falling near the location of plaintiff's fall, Combs Aff. ¶ 5, DE 24, and the video surveillance also captured three Wal-Mart employees walking through the vestibule before the plaintiff's accident, including the assistant manager Natasha Buckley. Pl.'s Br. 11-12. Therefore, according to the plaintiff, these employees "must have" or "very likely" been aware of the water on the floor of the vestibule before the plaintiff's accident. *Id.* at 12-13.

"To prove actual notice, plaintiff must present proof that defendants were, in fact, aware of the dangerous condition." *Ghali*, 2019 WL 1745704, at *6 (citation omitted); *see also Sanchez v. Pathmark Stores, Inc.*, No. 04 CIV. 1159 GBD/RLE, 2010 WL 1191633, at *2 (S.D.N.Y. Mar. 8, 2010), *report and recommendation adopted*, 2010 WL 1191451 (S.D.N.Y. Mar. 26, 2010); *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998). Actual notice can be proven circumstantially. *Ghali*, 2019 WL 1745704, at *6. If the defendant has either created the condition or has received reports or complaints from others about the condition, it is held to be aware of the condition. *Id.*; *see also Rouse v. Lex Real Assocs.*, 16 A.D.3d 273, 274 (N.Y. App. Div., 1st Dep't 2005); *Sanchez*, 2010 WL 1191633, at *2 (citing *Quarles*, 997 F. Supp. at 331).

In *Ghali v. Wal-Mart Stores East, LP*, plaintiff argued that actual notice can be inferred because video surveillance showed three different instances in which Wal-Mart employees walked past the dangerous condition of water being on the ground. *Ghali*, 2019 WL 1745704, at *6. The court rejected plaintiff's arguments, holding that the evidence was insufficient to infer that those employees were aware of the water. *Id.* Furthermore, the court also found that there was no evidence that the defendant received complaints about the area. *Id.* The court held that plaintiff failed to offer evidence to support an inference that a Wal-Mart employee had actual notice. *Id.*

Here, as in *Ghali*, the evidence is insufficient to permit an inference that defendant had actual notice. The fact that three Wal-Mart employees, including assistant manager Natasha Buckley, walked near the location of plaintiff's fall, does not mean that those employees were aware of the water. *Cf. Ghali*, 2019 WL 1745704, at *6; *see also* Combs Aff. ¶¶ 6-8; Pl.'s Ex. G, DE 24-7. Notably, plaintiff submits no testimony by Ms. Buckley or any other Wal-Mart employee as to their awareness of the water in the vestibule area. *See generally* Combs Aff.; Pl.'s 56.1 Response; *see also* Def.'s Ex. H at 39:17-20 ("Q. If [assistant manager Natasha Buckley] saw water on the floor, she would have to either address it or alert maintenance, is that right? A. That's correct."). It is also undisputed that plaintiff never received any reports or complaints as to the water in the vestibule area before plaintiff's fall, including any report or complaint from the customer who slipped before plaintiff's accident. *See generally* Combs Aff.; Pl.'s 56.1 Response. Lastly, as plaintiff concedes, no Wal-Mart employee cleaned the vestibule area before plaintiff's fall. Def.'s & Pl.'s 56.1 Statement ¶¶ 30-32; *see also* Pl.'s 56.1 Response ¶ 37. Therefore, despite plaintiff's conclusory assertions that Wal-Mart employees "must have" or "very likely" been aware of the dangerous condition, defendant did not, in fact, have actual notice of the dangerous condition.

2. **Constructive Notice**

Defendant argues that there is no constructive notice because "although plaintiff observed water on the floor prior to her fall, she did not adduce any evidence as to how long it existed on the floor prior to her fall." Def.'s Br. 9-10 (citing *Ghali*, 2019 WL 1745704, at *7-8). Plaintiff counters with circumstantial evidence in support of plaintiff's position concerning the timing of

9

the condition, including plaintiff's testimony that it rained earlier in the day, the weather report, and several customers seen carrying umbrellas on the surveillance video. Pl.'s Br. 8-9.

"To constitute constructive notice, 'a defect must be visible and apparent and it must exist for a sufficient length of time to permit defendant's employees to discover and remedy it.'" *Urrutia*, 681 F. App'x at 104 (quoting *Hartley v. Waldbaum, Inc.*, 69 A.D.3d 902, 903 (N.Y. App. Div., 2d Dep't 2010)); *see also Ghali*, 2019 WL 1745704, at *7; *Rivera*, 2017 WL 2709745, at *4. "[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant." *Ghali*, 2019 WL 1745704, at *7 (citation omitted); *see also Rivera*, 2017 WL 2709745, at *5 (collecting cases). Where evidence that a dangerous condition "had been present for a substantial period of time . . . together with testimony that the area where plaintiff fell is subject to regular inspection and cleaning[] is sufficient to allow a finding of constructive notice to defendants." *Chong v. Target Corp.*, 14-CV-547 (WFK)(JO), 2015 WL 2250250, at *3 (E.D.N.Y. May 12, 2015) (citation omitted). Timing can be proven circumstantially. *Id.* at *4; *see also Gordon v. Am. Museum of Nat. History*, 67 N.Y.2d 836, 838 (1986) ("Nor did he describe the paper as being dirty or worn, which would have provided some indication that it had been present for some period of time").

As an initial matter, a jury could conclude that the water was visible and apparent because plaintiff saw the water before she fell at approximately two to three feet away and the water was approximately four by four feet in size. Def.'s & Pl.'s 56.1 Statements ¶¶ 11-14. The

10

question presented is whether the dangerous condition existed for a sufficient length of time to permit defendant's employees to discover and remedy it. [4]

In *Chong v. Target Corporation*, Judge Kuntz held that defendant Target Corporation had constructive notice of liquid on the floor where it is undisputed the area where plaintiff fell is subject to constant inspection and cleaning, and a security camera video showed "'at least several people walk[ing] gingerly and carefully in the general area of the identified aisle where plaintiff fell' in the thirty minutes prior to Plaintiff's fall." *Chong*, 2015 WL 2250250, at *4.

Similarly, in *Spinner v. 1725 York Owners Corp.*, the Appellate Division First Department held "[t]he evidence that rain had been falling for an hour and a half before plaintiff slipped and fell and that persons entering the building were carrying, and sometimes closing umbrellas in view of the doormen for at least 40 minutes raises a triable issue whether defendants had actual or constructive notice of a dangerously wet and slippery condition in the lobby of their building." 56 A.D.3d 324, 324 (N.Y. App. Div., 1st Dep't 2008).

Here, as in *Chong* and *Spinner*, constructive notice can be inferred by circumstantial evidence. First, the vestibule area where plaintiff fell is subject to constant inspection and cleaning. As Ms. Jones testified, the vestibule floor should be inspected every fifteen to twenty

---

[4] Plaintiff cites to cases that appear to hold that proof of timing is not required because constructive notice can be inferred when defendant's employees are in the immediate vicinity of the dangerous condition. Pl.'s Br. 4-5 (citing *Rose v. Da ECIB USA,* 259 A.D.2d 258, 260 (N.Y. App. Div., 1st Dep't 1999); *Catanzaro v. King Kullen Grocery Co.*, 194 A.D.2d 584 (N.Y. App. Div., 2d Dep't 1993)); *id.* at 13 (citing *Cruz v. Target Corp.*, No. 14-CV-2728 (RER), 2016 WL 3102018, at *1 (E.D.N.Y. June 2, 2016)). However, none of these cases dispensed with proof of timing for constructive notice. *See Tingling v. Great Atl. Tea & Pac. Co.*, No. 02 CV 4196 (NRB), 2003 WL 22973452, at *2 (S.D.N.Y. Dec. 17, 2003) (citing *Rose*, 259 A.D.2d at 260; *Catanzaro*, 194 A.D.2d at 584-85) ("However, neither *Rose* nor the case it cites, [*Catanzaro*], held that notice could be inferred simply from the proximity of defendant's employees. Rather, these cases held that notice could be inferred from proximity *combined* with other evidence that the hazard was present for an extended period of time"); *see also Young*, 2017 WL 435783, at *4 (citing *Cruz*, 2016 WL 3102018, at *2) (holding that "some evidence of timing is still required").

minutes.  Pl.'s 56.1 Response ¶ 29.  Furthermore, Valley Stream Walmart employees can be seen twice adjusting the mats on the entrance side of the vestibule in the video surveillance at thirty-five and fifty minutes before the incident.  Def.'s Ex. M.  At 3:21 pm, an employee can be seen pulling a shopping cart from the vestibule to inside the store.  *Id.*  The "happy to help" employees were inside the store, separated by clear sliding glass doors from the vestibule throughout the video.  Pl.'s 56.1 Response ¶ 36 (citing Def.'s Ex. H at 36:18-37:17).  Three employees walked through the vestibule a few minutes before plaintiff fell.  Pl.'s 56.1 Response ¶ 36; Pl.'s Exs. E, F, G; Def's Ex. M.

Second, a jury can reasonably infer that the water was on the vestibule floor for a sufficient time to permit defendant's employees to discover and remedy it.  There is no dispute that it was raining for nearly twelve hours before the accident.  Def.'s & Pl.'s 56.1 Statements ¶ 38; Def.'s Ex. N.  The certified weather report shows that approximately a half inch of rain fell from 4:00am to 3:00pm on May 25, 2017 at John F. Kennedy Airport, about five miles away from the Valley Stream Walmart.  Pl.'s 56.1 Response ¶ 38; Def.'s Ex. N.  The surveillance video reveals several customers entering the Valley Stream Walmart with umbrellas nearly an hour before the accident.  Def.'s Ex. M.  Several of these customers closed umbrellas, walked to the vestibule area where plaintiff fell, retrieved a shopping cart from that area, and placed closed umbrellas in the shopping cart before entering the store.  *Id.*  Before plaintiff's fall, no employee mopped or wiped the vestibule area where plaintiff fell.  Pl.'s 56.1 Response ¶ 37; Def.'s Ex. M.  Furthermore, another customer slipped and fell in the vestibule area a few minutes before the plaintiff fell.  Pl.'s 56.1 Response ¶ 36; Pl.'s Ex. D; Def.'s Ex. M.  Accordingly, a reasonable jury can infer that the vestibule floor where plaintiff fell was wet for approximately fifty minutes

12

before plaintiff's fall, which is longer than the thirty minutes in *Chong*, and the forty minutes in *Spinner*.

As in *Chong,* defendant's views of what occurred in the surveillance video, such as whether the floor was "obviously wet and dangerous" and whether another individual slipped and fell at 3:48 pm, are genuine issues of material fact for the jury to decide. *Cf. Chong*, 2015 WL 2250250, at *5. Therefore, construing the facts in the light most favorable to the plaintiff, a reasonable jury could conclude that defendant had constructive notice of the condition that caused plaintiff's fall.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that defendant's motion for summary judgment be DENIED.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.** *Meija v. Roma Cleaning, Inc.,* No. 17-3446, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely

object); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *cf. Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* review or any other standard, when neither party objects to those findings"). This is particularly true, where, as here, a party has been "warned of the consequences of not objecting to the Magistrate's findings." *Meija*, 2018 WL 4847199, at *1.

Dated: Central Islip, New York
　　　November 13, 2019

　　　　　　　　　　　　　　　　　　　　　　/s/ Gary R. Brown
　　　　　　　　　　　　　　　　　　　　　　GARY R. BROWN
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge